FILED - USDC - FLMD - ORL APR 28 2026 PM2:28

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION

CHRISTINA O. ADELUSI,

**Plaintiff,**

v.

6:26cv933 AGM LHP

MORGAN & MORGAN, P.A., a Florida Professional Association,

**Defendant,**

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**Plaintiff Christina O. Adelusi**, proceeding pro se, brings this civil action against Defendant Morgan & Morgan, P.A. ("Morgan & Morgan" or "Defendant"), and alleges as follows:

## I. PRELIMINARY STATEMENT

1. This is an action for damages arising from Defendant's unlawful race discrimination, hostile work environment based on race, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Florida Civil Rights Act of 1992, § 760.01 et seq., Florida Statutes ("FCRA").
2. Plaintiff Christina O. Adelusi, a Black/African American woman, was employed by Defendant as a Litigation Assistant from approximately January 2024 through March 18, 2025, when she was wrongfully terminated. During her employment, Plaintiff was subjected to selective and discriminatory enforcement of workplace policies, a retaliatory Performance Improvement Plan ("PIP") issued without prior warning and in violation of Defendant's own progressive discipline procedures, a racially hostile work environment, and ultimately termination in direct retaliation for her protected complaints.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(4) (civil rights), and 42 U.S.C. § 2000e-5(f)(3) (Title VII).
4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

5. Venue is proper in the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices alleged herein were committed in Orange County, Florida, and Plaintiff was employed at 20 North Orange Avenue, Suite 1600, Orlando, Florida 32801.

## III. PARTIES

6. Plaintiff Christina O. Adelusi is an individual currently residing at 827 NW 110th Terrace, Plantation, Florida 33324. She is Black/African American and a member of a protected class under Title VII and the FCRA.

7. Defendant Morgan & Morgan, P.A. is a Florida Professional Association engaged in the practice of law. At all relevant times, Defendant operated an office at 20 North Orange Avenue, Suite 1600, Orlando, Florida 32801, where Plaintiff was employed. Defendant employs more than fifteen (15) employees and is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), and the FCRA, § 760.02(7), Florida Statutes.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2025-05446, dual-filed with the Florida Commission on Human Relations ("FCHR"), alleging retaliation in violation of Title VII arising from the same nucleus of facts alleged herein.

9. The EEOC issued a Determination and Notice of Rights (Right to Sue Letter) on January 27, 2026. This Complaint is filed within ninety (90) days of Plaintiff's receipt of that Notice, satisfying the prerequisite to suit under 42 U.S.C. § 2000e-5(f)(1).

10. Plaintiff has satisfied all statutory prerequisites for filing this action.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Performance

11. Plaintiff was hired by Defendant as a Litigation Assistant in or around January 2024, and was assigned to the Orlando office located at 20 North Orange Avenue, Suite 1600, Orlando, Florida 32801.

12. Plaintiff's direct supervisor was Supervising Attorney Michael W. Smith ("Smith"). The Human Resources representative with authority over Plaintiff's office was Kamal Chana ("Chana").

13. During her employment, Plaintiff received a salary increase, demonstrating satisfactory or better performance. Supervisor Smith told Plaintiff that her performance had improved and she was "doing fine." No verbal warnings, written warnings, coaching sessions, or

corrective performance feedback were ever communicated to Plaintiff prior to February 2025.

14. The use of personal electronic devices, including phones and iPads, was the established cultural norm at the Orlando office. Morgan & Morgan itself gifted iPads to employees, including Plaintiff, as a workplace incentive award. Other employees used personal devices routinely without discipline. At the time of the relevant events, Defendant's Employee Handbook contained no written prohibition specifically governing personal device use at one's desk.

**B. Discriminatory and Retaliatory PIP**

15. On or about February 13, 2025, Chana approached Plaintiff at her desk while Plaintiff was checking notifications on her phone after completing a client call, and instructed Plaintiff to use her device away from her desk. Plaintiff immediately complied. Chana did not similarly address non-Black employees who were using personal devices.

16. On or about February 18-19, 2025, Chana returned to Plaintiff's desk area and demanded that Plaintiff immediately put away an iPad that was sitting on Plaintiff's desk. The iPad was not powered on. No other employee was similarly confronted regarding a device that was not in active use.

17. On or about February 20, 2025, Smith sent an email to Plaintiff and her assigned paralegal, Katrina Robinson ("Robinson"), specifically prohibiting video watching and personal calls. When Plaintiff asked colleagues on the same office floor whether they had received a similar directive, they stated they had not. The selective communication of this prohibition to Plaintiff—and not to similarly situated non-Black colleagues—reflects disparate enforcement based on race.

18. On or about February 25, 2025, Smith called Plaintiff into his office and presented her with a 30-day Performance Improvement Plan ("PIP"). Smith explicitly told Plaintiff that Chana had instructed him to document prior conversations and place Plaintiff on the PIP. Smith acknowledged to Plaintiff that the performance concerns listed in the PIP were from earlier in Plaintiff's tenure and had already been addressed. Plaintiff had never previously received a verbal warning, written warning, coaching session, or year-end performance review — in direct violation of Defendant's own progressive discipline policy set forth in Section 2.2 of the Employee Handbook, which requires regular performance reviews and graduated corrective action.

19. The PIP cited, among other things, device usage during work hours — the exact conduct for which Plaintiff had been selectively targeted by Chana, and which was commonplace among non-Black colleagues who were never subject to discipline.

20. The temporal proximity between Chana's targeted confrontations regarding device use (February 13-19, 2025) and the issuance of the PIP (February 25, 2025) — a period of less than two weeks — supports a strong inference of both discriminatory targeting and retaliation.

**C. Hostile Work Environment**

21. Throughout Plaintiff's employment, paralegal Robinson subjected Plaintiff to a pattern of condescending, dismissive, and hostile conduct, including refusing to assist Plaintiff with work tasks, making demeaning remarks, and assigning blame to Plaintiff for errors outside her control or responsibility.

22. On or about March 11, 2025, Robinson publicly berated Plaintiff on the open office floor in front of colleagues, loudly yelling that Plaintiff "doesn't know her job" and that Robinson "does not care" what Plaintiff has to say. At least two colleagues witnessed this incident. Immediately after the incident, Plaintiff sent a written report to Smith and met with Chana to formally document the conduct.

23. Defendant's response was wholly inadequate. Management conducted informal conversations with witnesses, spoke to Robinson, and told her disrespectful communication "would not be tolerated." No meaningful disciplinary action was documented or taken. Management characterized the incident as having involved "less-than-tactful words exchanged from both sides," thereby minimizing and misrepresenting Robinson's aggression and falsely attributing equal culpability to Plaintiff.

24. Defendant's failure to take meaningful corrective action allowed the hostile conditions to continue and contributed to a workplace environment Plaintiff could no longer endure. Plaintiff suffered documented anxiety, loss of appetite, and ongoing stress that directly impaired her ability to perform her duties.

**D. Protected Activity and Retaliatory Termination**

25. Beginning in late February 2025, Plaintiff repeatedly engaged in protected activity under Title VII by complaining to HR and management about the discriminatory PIP, the lack of prior warnings, selective and unequal policy enforcement based on race, the hostile work environment, and violations of Defendant's Employee Handbook.

26. On March 13, 2025, Plaintiff formally notified management and HR in writing that she could no longer continue under the hostile conditions and that her mental and emotional health had been severely affected.

27. On March 13-14, 2025, Plaintiff formally invoked Defendant's Policy 2.9 (Abusive Conduct) in writing, expressly identifying Smith and Robinson as being in direct violation of that policy and formally demanding corrective action. This written complaint was addressed to Laura Fowler (Director of Employee Relations) and Chana.

28. On March 18, 2025 — just four (4) days after Plaintiff's most recent formal written complaint — Defendant terminated Plaintiff's employment. When Plaintiff asked Fowler for the specific reason for her termination, Fowler stated only that "the company has exhausted all options to help" Plaintiff. Defendant's stated reason is pretextual: Defendant had not followed its own progressive discipline procedures, had not taken meaningful

corrective action regarding the conditions Plaintiff complained about, and provided no written justification for termination.

29. Defendant offered Plaintiff a severance agreement in connection with her termination. Plaintiff did not sign or accept the severance agreement, preserving all of her legal rights.

30. The four-day gap between Plaintiff's formal written complaint of policy violations (March 14, 2025) and her termination (March 18, 2025) establishes a direct and clear causal connection between Plaintiff's protected activity and the adverse employment action taken against her.

## VI. CAUSES OF ACTION

### COUNT I — RACE DISCRIMINATION IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e-2(a))

31. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

32. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee with respect to the terms, conditions, or privileges of employment because of such employee's race.

33. Plaintiff is Black/African American, a member of a class protected under Title VII.

34. Plaintiff was qualified for her position and was performing her job satisfactorily, as evidenced by her receipt of a salary increase and her supervisor's positive statements regarding her performance prior to the events described herein.

35. Defendant subjected Plaintiff to adverse employment actions including, without limitation: the selective and pretextual enforcement of device-use policies that were not applied to similarly situated non-Black employees; the issuance of a retaliatory and unjustified PIP without prior warnings and in violation of Defendant's own progressive discipline policy; and the termination of Plaintiff's employment.

36. Similarly situated employees who were not Black were treated more favorably: they were not targeted or singled out for device use, did not receive the individualized February 20, 2025 prohibition email, and were not placed on PIPs under similar or identical circumstances.

37. Defendant's stated reasons for both the PIP and the termination are pretextual. The true motivation was Plaintiff's race.

38. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff suffered and continues to suffer damages including lost wages and employment benefits, emotional distress, mental anguish, humiliation, and damage to her professional reputation.

**COUNT II — HOSTILE WORK ENVIRONMENT BASED ON RACE IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e-2(a))**

39. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

40. Plaintiff was subjected to a workplace permeated with discriminatory conduct sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, linked to her race.

41. The hostile conduct included: repeated and targeted confrontations by Chana regarding device use that were not applied to non-Black employees; public berating by Robinson witnessed by coworkers; a sustained pattern of condescension, blame-shifting, and dismissiveness; management's repeated failure to take meaningful corrective action despite Plaintiff's documented complaints; and the pretextual PIP — all of which collectively created conditions Plaintiff subjectively perceived as hostile and which a reasonable person would likewise find hostile and abusive.

42. Defendant knew or should have known of the hostile work environment through Plaintiff's multiple oral and written complaints to HR and management, and failed to take prompt and adequate remedial action.

43. As a direct and proximate result, Plaintiff suffered lost wages and benefits, severe emotional distress, anxiety, loss of appetite, physical symptoms of stress, and other compensable damages.

**COUNT III — RETALIATION IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e-3(a))**

44. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

45. Plaintiff engaged in activity protected under Title VII by opposing employment practices she reasonably believed to constitute unlawful race discrimination, and by complaining to Defendant's HR department and management about discriminatory treatment, hostile work environment, unequal policy enforcement, and violations of Defendant's own Employee Handbook policies.

46. Defendant subjected Plaintiff to materially adverse employment actions, including the retaliatory PIP and Plaintiff's termination on March 18, 2025.

47. A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions. Plaintiff was terminated just four (4) days after her formal written Policy 2.9 complaint — temporal proximity sufficient to raise a strong inference of retaliation. No legitimate non-retaliatory explanation has been offered that is not pretextual.

48. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered lost wages and benefits, emotional distress, mental anguish, and other compensable damages.

**COUNT IV — RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT (§§ 760.10(1)(a) and 760.10(7), Florida Statutes)**

49. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

50. The Florida Civil Rights Act of 1992 prohibits discrimination in employment on the basis of race and prohibits retaliation against employees who oppose unlawful employment practices. § 760.10(1)(a) and § 760.10(7), Florida Statutes.

51. Defendant's conduct as described herein — including the discriminatory PIP, hostile work environment, and retaliatory termination — constitutes unlawful discrimination and retaliation in violation of the FCRA, analyzed under the same framework as Plaintiff's Title VII claims.

52. As a direct and proximate result, Plaintiff suffered lost wages, emotional distress, humiliation, and other compensable damages for which Defendant is liable.

**VII. DAMAGES**

53. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and is entitled to recover the following damages:

    (a) Back pay, including lost wages and employment benefits from the date of termination (March 18, 2025) to the date of judgment;

    (b) Front pay and future lost earnings, or reinstatement to her former or an equivalent position;

    (c) Compensatory damages for emotional distress, mental anguish, humiliation, loss of dignity, anxiety, and related physical symptoms, in an amount to be determined at trial;

    (d) Punitive damages pursuant to 42 U.S.C. § 1981a for Defendant's malicious or recklessly indifferent conduct toward Plaintiff's federally protected rights;

    (e) Pre-judgment and post-judgment interest;

    (f) Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and § 760.11(5), Florida Statutes; and

    (g) Such other and further relief as this Court deems just and equitable.

**VIII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Christina O. Adelusi respectfully requests that this Court:

(a) Enter judgment in favor of Plaintiff and against Defendant on all counts;

(b) Award Plaintiff back pay, front pay, compensatory damages, and punitive damages in amounts to be proven at trial;

(c) Award Plaintiff pre- and post-judgment interest;

(d) Award Plaintiff reasonable attorney's fees and costs; and

(e) Grant such other and further relief as the Court deems just and proper.

## IX. DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**Christina O. Adelusi**, Pro Se
827 NW 110th Terrace
Plantation, Florida 33324
Phone: (954) 504-8850
Email: adelusichristina@gmail.com

Date: April 24, 2026

## VERIFICATION

I, Christina O. Adelusi, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing Complaint is true and correct to the best of my knowledge, information, and belief.

Christina O. Adelusi

Date: April 24, 2026